respectively. Oral argument not to exceed 10 minutes for each defendant 20 minutes for plaintiff. We have Kelly Kukla, law student, for the appellant. You may proceed. May it please the court, I'm Coulter Paulson. I'm a law student. I'm a law student.   On behalf of defendant Carl Fowler and a law student from the University of Cincinnati Sixth Circuit Clinic is going to give the oral argument. Good morning. Good morning, your honors. May it please the court, I'm Kelly Kulka for Dr. Fowler and I'd like to reserve two minutes for rebuttal. I'd like to begin with three points. First, Congress says that you cannot sentence without a guideline calculation. Second, this court holds that a guideline calculation is necessary for meaningful appellate review. And third, this case illustrates just that. The district court imposed a sentence that was seemingly plucked from the pre-sentence report, but did not make a guideline calculation and did not make a finding of fact. Under a United States v. Gall, the Supreme Court emphasized that the district court should begin all sentencing proceedings by correctly calculating the applicable guideline range. As we discussed in our brief, parties cannot waive the guideline calculation. First, neither party claimed that 108 months was a guideline range. Second, parties cannot agree to an arbitrary figure. This court held in United States v. Johnson in 2012 that parties cannot agree to an arbitrary figure. They reversed the district court where the parties agreed to a figure that was between the two proposed guideline ranges. It was essentially the average of the two proposed ranges. The district court simply rubber-stamped that and the Sixth Circuit reversed. Was there any explanation by the judge here as to why he declined to provide a guideline calculation? There was a few different methods of explanation by the judge. First, he stated that he doesn't believe that sentencing requires a calculation. He explained that other judges apply a variance as opposed to doing what I do, and that was exclusively to apply the 3553A factors excluding the guideline range. He simply stated that the guideline calculation was only important for whichever party wanted to appeal later on. He then went on to say that the guideline calculation would be very difficult to make. He explained that he didn't remember much of the testimony, and he told parties that he didn't think they wanted to waste the time asking him to be a fact finder in terms of a trial that happened in March. So you see, the court led counsel to believe that the guidelines didn't matter, he wasn't going to calculate the guidelines regardless, and that they'd be nearly impossible to calculate during the sentencing hearing regardless, and thus he did not make a finding of fact. So when the district court then asked the prosecutor what he suggested as to be the sentence, the government threw out the figure 108 months, and based on the fact that the district court had already led counsel to believe that it wasn't going to matter for purposes of sentencing anyway, he was kind of backed into a corner and agreed to that 108 month starting point. But your honors, the record reflects that even though counsel did agree to that 108 month starting point, he didn't believe that the guideline range was waived because he continued to argue against leadership enhancement. In fact, the government continued to argue back against the leadership enhancement as well, which indicates that the guideline range was not made because if it was made, neither party would have engaged in that discussion altogether. Is there any case law that you can assist us with as to whether a party or a party's attorney or a defendant's attorney can waive the guidelines calculation? Your honor, there is no case law that I know of that allows for the calculation itself to be waived. And again, we would turn the court to United States v. Johnson in 2012, where though the guideline range wasn't waived, but the parties did agree to, again, this arbitrary figure, and the district court just kind of rubber stamped that. It's the closest thing, I think, to this purported waiver that we have. But again, no case law that conclusively says the calculations. I guess the Supreme Court's pronouncement in Gall would argue against the waiver as well, don't you think? Yes, your honor. The Supreme Court, again, emphasized that the district court needs to make the correct calculation as to the guideline range. Mike, part of the reason that there's no case law would be that, you know, the guideline range calculation exists not only for the benefit of the parties to set the parameters of any issues for appeal, but it also exists for the benefit of the appellate courts so that we can properly review the case. Exactly, your honor, and that was the concern in United States v. Johnson. Again, this court was, they noted that it was very fair for the judge to agree to that average sentence, but again, that it put the appellate court in a poor position for review. They simply had nothing to go on. Well, it's not, it's kind of a, I mean, it has usefulness for the parties, but it's also kind of a judicial administration issue. Exactly, your honor. Part of their waiver argument was regarding the whole concept of procedural reasonableness, correct? Yes, your honor. And we know you, failure to object, even under Sixth Circuit law, failure to object to a sentencing error doesn't constitute waiver, but we have some law just on the procedural reasonableness concept that would suggest that a defendant could make a, I think we call it under United States v. Maybe, a plain explicit concession on the record regarding a procedural reasonableness argument. Is there anything in the record that your opposing counsel could call a plain explicit concession of waiving your procedural reasonableness argument? Your honor, I think what you're referring to is the agreement that counsel did make. After the prosecution stated that they believed the appropriate sentence was 108 months, the court had already made it clear that he wasn't going to make a guideline calculation and that it didn't matter for sentencing, and showing deference to the court in ultimate respect, I think that counsel understood he had to go along with that figure because his objection essentially fell flat. So the error was precedent to any agreement? Yes, yes, and he did again object to the non-calculation of the guidelines prior to that agreement and continued during the sentencing hearing to continue to bring up the guidelines. He mentioned three other times after the purported agreement that the guideline range was still there and he said at one point, I still have my variances, but I understand that we're moving on from the guideline range. So again, counsel continued his objection but showed deference in respect to the court nonetheless. Ultimately, though, the court did not adhere to the 108-month starting point. Though parties had ultimately agreed to move forward, the court still sentenced based on the figures in the pre-sentence report. The court plucked the restitution amount directly from the pre-sentence report. He imposed $1.7 million in restitution. The testimony during trial could support only about $40,000 in restitution, so the court imposed about 40 times that amount. That figure was present in the pre-sentence report. The court showed deference toward the probation department's calculation during sentencing, and he rejected counsel's own calculation. He called counsel's calculation a get-out-of-jail-free card, which shows that he certainly had showed deference toward the pre-sentence report but also that he didn't believe the guideline range had been waived because if the range had been waived, he wouldn't have made it a point to mention counsel's guideline calculation nor reject it. So you see, Your Honors, the court's own statements show that the district court simply adhered to the pre-sentence report, did not go along with the figure that was agreed upon by counsel, and, again, there was no calculation nor finding of fact. And did the court provide an explanation as to why he was using, in addition to what you've already stated, the figure from the pre-sentence report? He did not, Your Honor. The only thing the court did say is he said, we're talking about a lot of money that Dr. Fowler was convicted of receiving by the jury. I think that's the closest indication of where he came with this number, but the jury did not convict Dr. Fowler of a certain amount of money. There was no amount of money that was associated with the conviction, just that he was convicted on counts 111 and 21, but no figure was proposed on the superseding indictment for Dr. Fowler, and thus the jury did not convict Dr. Fowler of receiving a certain amount of money. And, again, the testimony could support just about $40,000 of restitution. Your Honors, I'd like to make just a few substantive points as well. First, the government assumes that 50% of Dr. Fowler's and Dr. Clark's prescriptions were illegitimate, but the government's own witnesses testified that 80% of Dr. Fowler's prescriptions were legitimate and that Dr. Clark was not involved whatsoever. Second, the government assumes that Dr. Fowler was involved for two years, but the government's own witnesses testified that Dr. Fowler was involved for just one year and had only increased his prescriptions for Opana for about two months. In fact, the government's own witness, Mr. Taylor, and the government's own chart do corroborate that two-month statement. These factors alone would reduce the government's drug estimations from 2,237 kilograms of marijuana equivalency to approximately 50 kilograms of marijuana equivalency, and likewise the restitution amount from $1.7 million to approximately $40,000. For these reasons, Your Honors, Dr. Fowler respectfully requests that the court remand for resentencing. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm here this morning representing Michael Thoran, and I'd like to reserve two of my minutes for rebuttal if I may. Your Honors, the problems that occurred at Mr. Fowler's sentencing continued on in Mr. Thoran's sentencing a couple months later, and that is that there were no findings by the court as to the amount of drugs involved in Mr. Thoran's case to allow a reliable guidelines calculation in this case. In fact, the amount of drugs issue is a hard issue in Mr. Thoran's case, and I think that's the problem in this case is that the amount is such a hard issue that everyone abdicated their role in the sentencing process in coming up with the actual correct amount of drugs that should be attributable to Mr. Thoran in this case. If you take a look at the PSR report in this case, it doesn't appear that probation did anything independently to determine the amount of drugs involved in this case. As a matter of fact, the only couple sentences with regards to that are the government has provided information that, and that is the total sum. And it's interesting because the information that was provided by the government with regards to the amount of drugs attributable to Mr. Thoran is exponentially different than what they provided the jury during the trial in the case as allegedly being involved in Mr. Thoran's case, to the tune of some 500,000 doses difference. If you take a look at government's exhibit number 20, they provided the jury with all amounts that were distributed to all of Thoran's patients from all pharmacies from January of 2009 through sometime in June of 2011, and that came to 109,000 doses in total. That's what they told the jury. They tell the PSR folks that it was 600,000 doses, and there's no explanation for where this 500,000 increase comes between the time of trial and the time of sentencing. Now that makes, obviously, a huge significant difference in the guidelines calculation, but the court, after probation decided to pass on this, the court decided to pass on it as well. There was, again, this discussion much like in Mr. Fowler's case of what sounds right in this case, and the parties came up with a range of 168 to 210, which is unmoored to any actual figure as to what the amount of drugs were that are attributable to Mr. Thoran in this case, and that's the problem. If you actually go back and take a look at what the government alleged was involved in Mr. Thoran's case at the time of trial, the number, again, drops precipitously. It drops. The amount that Mr. Thoran's lawyer apparently agreed, and I understand you do not represent him in the district court, would the amount that they agreed to comport with the trial figures, or did it comport with nothing? I can't figure out how it comported with anything. More than what the figures? It is more than the figures. It is more than the figures. And here's the problem. So trial proof shows one thing, his lawyers agree to a greater amount. And that's the reason why we argue that even if there's a stipulation here as to the amount, which we don't know what the amount is, but they talk about a guidelines range, not an amount, but even if there's a stipulation, it doesn't abdicate the court's responsibility to make a finding. I'm not suggesting that it does. I mean, maybe the attorneys were aware of more doses than proof was offered about. I don't have any idea, but it seems strange that that would be the figure agreed to.  Am I confused? It's like $455,000? And you're saying 109 is the actual calculation of the jury, 600-and-somethings in the PSR, but it was $455,000? Exactly. And we have no idea where that came from? No. Well, there's a couple problems here. One is that there was a carousel of attorneys in this case in the court below. And that was obviously some problems with the client that caused that. But there was an attorney at trial, and then there was an attorney for sentencing that wrote the sentencing memorandum that agreed to the 400-and-some-thousand figure. And then a month and a half before the sentencing, another attorney is involved in the process representing Mr. Thran, who doesn't file a sentencing memorandum or anything else and just relies on what was filed before by the previous counsel, of which Mr. Thran was having these problems. And part of these problems is relating to, I think, the amount of drugs issue. And so that's a little bit of the problem. Maybe everybody just sort of lost touch of what the trial actually showed. I think that's part of the problem. And, again, it's hard because if you take a look at Government's Exhibit 28, which is what they presented at the trial where I get my 109,000 doses, you actually have to do a lot of math because you have to do doses doesn't equal grams. So you have to figure out how many grams is in a dose. And then once you get to grams, then you have to do the calculation over to marijuana equivalency to get then to a guidelines range. And I think that it created an issue. Back up factual problems, too. Absolutely. I thought I understood that the real problem was calculating what actually occurred because he accompanied some people and gave them their drugs. Other people said then he began to go and get the drugs and keep them. But was there ever any estimate of what was kept as opposed to what was passed on? And, Judge Strands, it's even worse than that because even with the 109,000 figure, this is all Patel pharmacies, all controlled substances from all of Theran's patients from January of 2009 through July of 2011. Now, we know that Theran wasn't even involved in this case until July of 2009. So we have six months that we have to figure out how to take out of these figures, which we don't know the numbers to be able to figure out which is when. And then on the other side of it, VDA, who Mr. Theran was involved with, closed in November of 2010. So that provides another seven months out of this 109,000 figure that we've got to eliminate. Then we've got to determine, well, every time that one of Theran's patients showed up at one of these pharmacies, was Theran with them? Did he take the drugs? So we've got that problem, too, to back out from all these 109 figures. But yet somehow when we get to sentencing, it's now up to 600,000. I just wanted that factual clarity. Yeah, absolutely. I'm interrupting your response. No, and that is the basic problem here, that there's no reliability. I think it's akin to like if the parties came in and there was no evidence of possession of a firearm. And the parties both said, yeah, we want the two-point enhancement for possession of a firearm. But it doesn't relieve the court of at least trying to figure out if there's some evidence that there's a firearm that was involved in the case, if it's nowhere in the PSR, nowhere at the trial. And that's what this is. Somehow we came up with either 455,000 or 600,000. It's not in the trial, and it's not in the government's own proof. Can I ask another question about this? Well, go on. I've lost a little bit of my train of thought. Well, I only have 13 seconds left. Oh, I'm sorry. No, I just lost. I've got two minutes left for rebuttal. I have one more. Yes, Your Honor. It'll come back in my mind momentarily. Yes, Your Honor. What is the case law that you could cite to that in this situation where you've offered a restitution amount that would suggest that you have a right to go back and have a contested hearing? Well, obviously, and I'll say two things about that. One is that that was one – well, two counsels removed at this point, but at least one counsel removed at the time of sentencing that that restitution number was given. So, in other words, it was Mr. Barris who, by the way, was the same person that came up with the 455,000 doses or whatever that number was that they came up with with the amount of drugs. Second, obviously, it was rejected by the district court as a number because the court came up with two-point-some million. So, once it's rejected, we should be free on remand to make whatever arguments we think are appropriate based on the actual evidence in the case. And I didn't – it flitted back and forth. Yes, Your Honor. You said all the pharmacies. I understood this case related to a single pharmacy. Is that right? This was all Patel Pharmacies. So, the $109,000 – So, the indictment charged all the pharmacies. Yes, and it's – I thought you meant only the figures involved all the pharmacies. No, in actual page 2 of the – I was trying to figure out if this was relevant conduct or if it was actually charged conduct. Sure, no. This was – they actually named the top ten pharmacists on the second page of this document that kind of break down most of this 109,000-dose figure. Thank you, Your Honors. Thank you. Thank you. May it please the Court, Wayne F. Pratt appearing on behalf of the United States. I'd like to address the arguments in reverse order. Defendant Michael Tharan, also known as Ace, was a marketer in this enterprise, and that's essentially someone who pays patients to go see a doctor for fraudulent doctor visits, gets the controlled substance prescriptions, and sells the drugs on the street. I was trial counsel in this case. The chart that was introduced in evidence at trial – that the government introduced at trial that had over 100,000 was a very narrow sampling of the defendant's participation. What happened was one of the fraud – Help us understand. So you entered an exhibit that indicated that this was an exemplar for how he did his marketing? Yes, Your Honor. Did you – the amount of restitution was a contested issue at sentencing. Your Honor, we've – I was trying to address the pills. But, yes, we've agreed to a remand for the restitution because we essentially agreed to their proposal of the guidelines. There was a stipulation. Well, I just want to ask about something Mr. Shadd argued about, even if you have agreed to her. How did we get from the 109,000 that Mr. Shadd calculated and that you would say is represented by the sliver or whatever of the chart to 455,000 or 600,000? I was trying to explain that based on the trial testimony. You have to understand that that 109,000 was only a sliver. What happened was there was a search warrant at the corrupt – I just want to make one thing clear. On the 109 that is a sliver – Yes. Did your chart say this is an exemplar of a limited time frame? It was in a limited time frame. Yes. As a chart? Yes. Yes, the evidence – If we looked at the exhibits from the trial, it would indicate. Here's the big thing. We're only looking at this narrow. I don't know what the label of the chart is, but the evidence that introduced the chart explained the limitations of it. I'm not asking you a question about how you get there factually. I'm asking you a question about what happened in the case and what I really want to know. There was an objection to the amount of restitution, but you put on no proof, as I recall, to establish any amount of restitution other than what was set forth in the pre-sentence report. Wouldn't you have been required to assume the burden of proof on that issue once the objection was made? And we agreed with their objection to the lower loss amount. They stipulated to a lower loss amount, and we believe that that should be remanded, and that lower amount, they should be held to what they stipulated to. And it's really kind of astounding to me that the attorney for Michael Thoran is saying that when counsel enters into a stipulation that that can't be accepted and we can now up and get into the weeds. And I want to argue, I want to explain a little bit about the weeds. What about the point that we are talking about whether he can stipulate or not? I mean, there's some things that it doesn't matter whether the parties stipulate to. The court has to have whatever is needed for its own review. And so it's both a question of the parties, but it's a question of the court. So that's the reason we would be questioning things that were stipulated to or agreed to between counsel. If I just could get through the factual issue of why that's only a sliver of Defendant Thoran's conduct. The testimony supporting that chart shows there was a search warrant at the corrupt medical practice. Some of the charts seized had Ace written on them, which was the Defendant's nickname. We didn't get every chart from there. We didn't get the whole period of time from there. We didn't get every patient that he used. We only got a sampling. I'm following what you're trying to say. I understand you're saying you don't have the evidence to do that, so what you're doing is an exemplar, and you're allocating that across a larger time period. But wouldn't you have had, if there are little sign-in charts at the pharmacy, you would have had those that Ace did because they would have been on his chart for whatever time period you confiscated the forms, correct? They weren't at the pharmacy. They were at the medical practice. The medical practice threw a bunch of them out after the patients were done signing in. We only got a sample of that. It was that sample that we then calculated all the pills and the fraud related to that. That chart we introduced is at least 109,000. It was clear there was more because we didn't get the sign-in charts for all of Ace's patients. What evidence did you have to support the higher figures? Well, the higher figures was then, the higher figures actually took those patients and applied them across a broader period of time. To the patients? To the patients that were associated with him and the patients that were associated with VDA. You interviewed each of the patients? No, they did not interview all the patients. I guess what I'm saying is that they're establishing, they're trying to say that we took the position at trial that this 109,000 was the maximum, was the ceiling. It was actually a floor. Well, the whole problem with the case is that there was no finding either on factual amounts or on dollar amounts because your opposing counsel argues that you can't extrapolate to a larger time period because this is a patient-based issue. That patient may have only received prescriptions for one month out of the two-year period. So to say you had X dollars during this time frame is not indicative that those same patients took the same amount of drugs over the extended time frame. So I understand where we are with this, the factual problem. I think my question ultimately to you is if there is this kind of stipulation with which you agree, what case law do you have that says that you cannot go back if it's a reversal situation and have a contested hearing? Why are you bound to a limited remand? Why is Mr. Thorne bound to a limited remand? Because they stipulated to a particular amount of drugs and a particular amount of loss, and I think it would be an astounding decision if this court was to say that when the government in pre-sentence takes one higher position, the trial testimony says this lower number is a sliver. The defense then, in their brief, in their thing, says, let's go with this guideline level. That's why there's no factual findings. That's why we haven't parsed through it, because they agreed to it, and it's really astounding that they can come up here. But I just want to say one thing to you, and this is based on a lot of experience. You can sit here and you can say how astounding that is, but if you lack the ability to prove the amount of loss, and that's why you want to rely on the stipulation so strongly, it might be a better use of government resources, if we send this back, to go about proving what you can prove than sitting there and talking about the stipulation, because if Mr. Thuran has a valid ineffective assistance claim against one of those lawyers who stipulated without ascertaining whether you could meet your burden of proof, then at some point we might be back where we started, and you ought to think this through before you talk too much about how astounding it is. I'm just listening to this, and I'm not hearing anything that makes me very confident that the government can meet its burden. And I guess part of that problem, Your Honors, is that because when you stipulate, the judge doesn't make factual findings, because when you stipulate we don't drag out point by point, and that stipulation was entered well in advance of the sentencing hearing, and so you're really kind of saying when they have a stipulation the government has to be prepared to go patient by patient. I'm saying a defense lawyer, in my opinion, should not stipulate to an amount he knows the government cannot prove. I would like to move to the Fowler case. I'm sorry. I understand this is a difficult question, but does your position hinge on whether or not the Defendant's Counsel objected to the figure entered at the restitution sentencing phase? Because I think you argue that you entered a deal, we're done, but I think the record reflects that the attorney representing there plainly objected to the restitution amount as the figure is wildly high. So it's even more complicated. You enter some sort of an agreement, and then you get to sentencing, and there's an actual objection. Does that not change your argument? I don't think. Their objection was it was wildly high before you accepted their stipulation. I don't see them saying that it was wildly high after you accepted their number. I'd like to address the Fowler issue, where, again, you have this remarkable legal proposition, not supported by any case law, that says you cannot waive your statutory right to a sentencing calculation. And I appreciate the Court's frustration that it would make it a lot easier if we had a sentencing calculation. At this point, I'm wishing that that procedure had not been followed. But the fact is it's a statutory right that can be waived. This Court has previously, in the Beals case, said you can waive your right to have this Court review it. So this Court has accepted that the district court can get it totally wrong in the calculation of a sentencing guideline. The actual guideline should be 0 to 6. The Court calculates the guidelines as life. There's no evidence to support it, and it doesn't matter. This Court has said if you waive that, we're not going to review it. We may get there on 2255. The opposing counsel said something to the effect that the defense counsel agreed with the judge at one point about the calculation. I don't know if that was under pressure from the Court or not, but thereafter continued to raise issues about the calculation. So does that really amount to a full-throated waiver of anything? Yes, it does, Your Honor, because if you look at those particular pages of the record, and it's starting at page ID 19929 to 19930, after the defense has entered into their agreement that we don't need it, we'll just go down from the government's recommendation instead of down from a guidelines calculation, he then says at 19930, I guess I would like to address the leadership enhancement, Mr. Fishman, not so much, by the way, for the three points, but it really kind of goes to, in a sense, to the first of the 3553A factors, which is the nature and circumstances of the offense. So he understands that the points don't matter anymore, but in determining the nature and circumstances of the offense, obviously the judge is going to impose a different sentence if they think the defendant is some sort of leader in this enterprise as opposed to not. And then there's a discussion, and the Court doesn't make a determination on the three points, but the Court at 19933 says, so I'm going to acknowledge that there's some relationship where it's either leadership or very close to it just from the relationship of the two doctors. So the fact is we're not adding points anymore, we're not doing a guidelines calculation, we're going to 3553A factors as to where the defendant is in this hierarchy. And so rather than support the defendant's position, it absolutely confirms what everyone who was there understood, which is that we don't need a guidelines calculation, we're going to start with the government's recommendation, which is far lower than the guidelines calculation, and we're going to go down from there. And he went down from there, from the government's recommendation of nine years, he went down to six years. Well, if you look at our MAYBE case, USV MAYBE, it talks about the fact that failure to objectives, that can't weigh the guideline range calculation, but it does speak in terms of plain, explicit concession on the record that the guideline range need not be calculated. Are these the pages that you suggest make a plain, explicit concession on the record that guidelines need not be calculated? Your Honor, it's not only that, which was after the stipulation, but in page 25 of the government's brief, Mr. Fishman, who either way is a very experienced and highly respected lawyer, says, and this is at page IDs 19928-29, and if everyone agrees that that's where we start, and if the court were to depart from that, the comparison for purposes appealed by the government would be 108 months, then I'm prepared to go forward just like that. And there was no more talk of, we're going to have to calculate the guidelines. And then, of course, there was the Bostic opportunity at the end, and he said, no, I don't have any objections that weren't previously raised. So the government's perspective, I'm sorry, we really feel like we're being sang-bagged here, in essence, by a substitution of counsel, because if Mr. Fishman was here, you could ask him, doesn't that sound like a pretty clear waiver of a finding of guidelines? You know, there's this language in some of the Supreme Court cases about the court not being bound by the guidelines, but the guidelines should be calculated because that's the beginning point for the determination of the sentence and the court's discussion of the Section 3553A factors. And if we say that parties can start dispensing with the guidelines calculation and the court doesn't have the duty to do that anymore, it seems as though we'd be getting ourselves in opposition to what the Supreme Court has said. They've said the guidelines need to be looked at, and I imagine that means that they need to be properly calculated. And if we start agreeing that the court doesn't have to do that, really, doesn't that get us into trouble with the Supreme Court ultimately? Maybe not in this case, I don't know, but ultimately there's going to be a real problem. Your Honor, I don't think there is because, as we cited in our brief,  including rights against, rights to not incriminate yourself, rights to allow Fourth Amendment searches, but specifically this court has said you can give up your right to appeal that. This court has also said, and the Supreme Court has said, you have a constitutional right to have the guidelines be simply advisory. This court held in the... The Supreme Court has also said how they want sentences to be imposed and how they're to be determined and calculated. I mean, the guidelines are advisory, but they have to be attended to as the beginning point or at least a factor in this calculation of the sentences. The Supreme Court has made that quite clear. Your Honor, the Supreme Court has made it quite clear they have to be advisory and that this court, in a published opinion, has said you can stipulate that they're mandatory. Now, are you going... I'd like to ask you about something else. You know, there's another issue here, and that is whether it's good from a policy perspective for the United States to arbitrarily be taking for itself the pulling out of the air of a figure that is unhinged to the guidelines. And, you know, I'd like to know what you think about the policy. I mean, in one case, it might be advantageous to the defendant. In another case, it might be disadvantageous. And if district courts blindly accept a figure suggested by the government as a starting point, it seems to me the court's abdicating its responsibility to the government to do something the court is supposed to do. In this case, there were four trials with 14 defendants, and 38 defendants were sentenced. Dr. Fowler was approximately the 25th defendant that was sentenced. So we had a pretty good pattern of what Judge Tarnow was going to do, and that was... But Judge Tarnow had that pattern too, didn't he? Yes, he did. And that's why... If you've sentenced as many people as he had in this case, you know the case pretty much in and out. You know where you think he sits. And so that's why the government's recommendation was not a willy-nilly pulled out of the air. Based on the people both more culpable and less culpable than Dr. Fowler, who had already been sentenced, the government believed that the nine years was a reasonable sentence. We couldn't ask for... That's a fair argument, and I understand that. But I think what Judge Gibbons is asking you is, this is a rule not just about the 20 or 30 defendants in your case, but the fact that there are individual defendants in cases everywhere and there are a huge number of conspiracy cases with many, many people involved. And if the government is now in the seat of being able to establish reasonableness by proposing a figure, and that is not able to be reviewed by the appellate courts as to whether there is the perception of fair sentences, reasonableness itself, even in your position, don't you have to recognize that that creates a problem for a sentencing system? It creates a problem for the government, who the defense leaped on it and took advantage of it and said, I'd much rather start at nine years than something that's going to be close to 20 years, even if the court had given him a couple levels off, was still going to be higher. He leaped at the advantage to start from nine years and go down from there. Wouldn't it have been better for this court, far better, to have let the court determine the guidelines? And then if the government wished to take a position about what the appropriate sentence was, it could have done so, preferably supporting it with some reasoning so we would have something to tether it to, rather than just saying, oh, let's start at 108 months. Your Honor, all I can say is that the defense has successfully told the court that there had to be detailed factual findings when the very essence of a stipulation on waiver is to avoid having those detailed factual findings. And I think if this court enters an opinion which says that there need to be detailed, specific, supportable factual findings even when there's a stipulation, it's going to create a tremendous burden and, frankly, a tremendous mess on everyone who handles this on a daily basis. Thank you. Rebuttal. Your Honors, Mr. Schatt has agreed to give me his rebuttal time. All right. I'd like to make just a few points. First, Your Honors, Judge Clay, I'd like to agree with you that Gall is binding, and Gall governs this case because Congress has stated that the guideline range must be calculated for federal sentencing. And secondly, the government contends that counsel agreed to a guideline calculation. He did not. He agreed to a number to start off with, just as what counsel and, well, the two parties agreed to in United States v. Johnson in 2012. Is that the only agreement? The one? The agreement to start at the 108 months. Your Honors, yes, I believe that was the only agreement. There's no other stipulation? No, there was no other stipulation. Okay. And what about the waiver issue? There was no waiver. Again, there was simply, again, that agreement of that starting point. So they agreed on an arbitrary figure, but they didn't necessarily waive anything. There was no guideline range that was waived. I don't remember from the transcript. Is there even any explicit discussion of giving up the right to have the guideline range calculated? No, Your Honors. In fact, the court had already stated that it wasn't going to sentence using the guideline range, and counsel continued to say that he had read enough case law that led him to believe that the guideline range must be calculated, to that the court said, no, it's just the defense attorney or the government. The defense attorney argued for the guideline range, but he agreed to that 108 months only after the court said that it would impose a sentence without reference to the guidelines on, and that was page ID 19926, that the court said that. The law also requires that there be a plain, explicit concession that the guidelines not be calculated, but there was none. Just as you pointed out, Judge Gibbons, there was no plain, explicit concession there other than the 108-month agreed-upon starting point. And further, the government contends that counsel didn't renew his objection after the Bostik question, but first and foremost, there was no Bostik question. The court never asked the Bostik question. The prosecutor raised a question whether or not anyone had any objections, but this court's precedent is very clear that what is the Bostik question and what isn't the Bostik question, and since the court did not ask that question, counsel wasn't under any obligation to renew his objection, but he did. He said that he had none other than what had already been raised, and he had raised the amount of drugs, the amount of restitution, the leadership enhancement, and the guidelines. He argued for the guideline calculation and, again, made it a point to slide in a comment about the guidelines three other times after that point. Your Honors, again, there was no waiver. You cannot waive the guideline calculation, as Your Honors have pointed out, because it does preclude meaningful appellate review. And in this instance, Dr. Fowler did not waive his guideline calculation upon that 108-month starting point. Thank you. Thank you very much, and Ms. Kalkau, you did an excellent job in your first argument, so congratulations for that. Thank you. The case is submitted.